IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **GWENDOLYN KEMP,** | ) |
| Plaintiff, | ) ) ) |
| v. | ) 02:04cv1731 |
| | ) **Electronic Filing** |
| **DEL MONTE FOODS,** | ) |
| Defendant. | ) ) |

**MEMORANDUM OPINION**

August 6, 2007

**I.   INTRODUCTION**

Plaintiff, Gwendolyn Kemp ("Kemp" or "Plaintiff"), is a 57-year-old African-American female who is seeking redress for alleged violations of her rights under Title VII of the Civil Rights Act of 1964, as amended by the Equal Employment Opportunity Act ("EEOC") of 1972, and the Civil Rights Act of 1991("Title VII"), 42 U.S.C. § 2000e-1, *et seq.*, the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621, *et seq.*, and the Pennsylvania Human Relations Act ("PHRA"), 43 PA STAT. § 951 *et seq.* Kemp contends that defendant, Del Monte Foods ("Del Monte" or "Defendant"), discriminated against her in its failure to promote her, increasing her workload without corresponding salary increase or promotion, taking away earned compensatory ("comp") time, and denying her request to use unaccrued vacation.

Following the close of discovery, Del Monte filed a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, and in support of its motion filed a memorandum of law and a statement of undisputed material facts. Plaintiff has filed a response to Del Monte's statement of undisputed facts and a brief in opposition to Defendant's motion for summary judgment. The motion is now before the Court.

**II.   STATEMENT OF THE CASE**

Plaintiff filed her first charge with the Equal Employment Opportunity Commission

(EEOC) on August 13, 2004, and subsequently filed her first federal court action on November 12, 2004. On May 31, 2005, Plaintiff filed a second charge with the EEOC, and filed a second federal court action on December 9, 2005,. The federal actions were consolidated on February 6, 2006.

In July 1998, Plaintiff sought and received a full-time position in H.J. Heinz Company's Production Planning Inventory Control ("PPIC") as a System/Supply Analyst. (Defendant's Consolidated of Undisputed Facts hereinafter "Defendant's CSUMF" ¶ 2). In this position, Kemp wrote computer programs and processes that allowed various business units at Heinz to access data that was available on a company-wide basis. She was also responsible for importing data into a database that Heinz employees utilized for planning, production and inventory control. Kemp was the only employee in the company performing this function. (Defendant's CSUMF ¶ 3).

In May 2002, Plaintiff submitted applications to several vacant positions at Heinz – two planning positions in the Soup and Infant Feeding business unit and an Old Age Analyst position. (Defendant's CSUMF ¶ 6). While parties contest whether the Old Age Analyst position was filled, Plaintiff was not selected for the position. (Defendant's CSUMF ¶ 7). The production planner positions were filled by external applicants who had bachelor's degrees in business logistics and had prior planning experience. (Defendant's CSUMF ¶ 12).

In July or August 2002, Plaintiff applied for a Financial Analyst position in the Finance Department. (Defendant's CSUMF ¶ 14). She interviewed twice for the position. While she thought the first interview went well, she felt her second interview with Steve Reyburn did not. She said that Reyburn did not use a "good tone" and Plaintiff was bothered that he asked her about the other candidates for the position. (Defendant's CSUMF ¶ 16). Her final two interviews were cancelled.  Kemp believed she was not considered for the position because of her race, gender and age. (Kemp Dep. Tr. 158)

Effective December 2002, Del Monte acquired certain Heinz business units, and Plaintiff became a Del Monte employee. (Defendant's CSUMF ¶ 21). In her transition to Del Monte, Plaintiff was given additional responsibilities. She supported more business units and used new

tools to prepare reports. (Defendant's CSUMF ¶ 25). In the four-year period after the acquisition, the roles of all employees in Plaintiff's department changed in some way. (Defendant's CSUMF ¶ 28). In early 2004, a production planner left Del Monte and a manager asked Plaintiff to take on some of his duties. After taking on these new duties, however, Plaintiff realized that it was too much work and these duties were distributed to other employees. (Defendant's CSUMF ¶ 31).

In December 2003, Plaintiff applied for a Senior Cost Analyst position in the Finance Department. She was not interviewed for the position. A candidate who already worked in Del Monte's finance department, and who had a bachelor's degree in finance and four years of financial experience outside of Del Monte, was hired for the position. (Defendant's CSUMF ¶ 45). Plaintiff believed that she was qualified for the position. (Kemp Dep. Tr. 166).

In 2004, Plaintiff earned a top-tier performance review and received one of the highest percentage merit increases for that year. (Kemp Dep. Tr. 195). Plaintiff, however, complained that favorable comments written by her manager, Lanny Shoup, should have been included in the final performance review. Shoup commented that "I believe she should be promoted to a higher level to match the job she is currently doing." (Defendant's CSUMF ¶ 50). Melissa Rumbold, a Human Resources manager, does not specifically recall deleting the comments but said she would have done so because Del Monte performance reviews are not to include comments concerning salary grade levels or promotional opportunities. (Defendant's CSUMF ¶ 52).

In May 2004, a business change required Plaintiff to convert a company database. Plaintiff estimated that this project would take 120 hours. Plaintiff claimed to have e-mailed manager Rob Sobol explaining she would need to work weekends to complete the job, and requested comp time for the hours spent on the project "[because] this is above and beyond what I already do." (Kemp Dep. Tr. 95-96). Sobol did not respond to the e-mail, but Plaintiff contends he told her it was "fine" and to do whatever she needed to do. (Defendant's CSUMF ¶ 56). On October 19, 2004, approximately two months after filing her first EEOC claim, Plaintiff requested her comp days. Sobol told Plaintiff that her request was surprising because Del Monte had never before provided comp time to any employee. Del Monte does not have a policy or program that permits compensatory time off. (Defendant's CSUMF ¶ 64). While Sobol

3

acknowledged that he sometimes permitted employees to leave work early in recognition of hard work, Del Monte does not permit hour-for-hour comp time. (Defendant's CSUMF ¶ 67).

In June 2004, Plaintiff requested help with the database conversion project. (Kemp Dep. Tr. 98). Soon thereafter, Defendant hired an intern, Aymeric Deneoud. Plaintiff asserts that Sobol said that she and Deneoud were to be "joined at the hip." (Kemp Dep. Tr. at 338-39). Soon after Plaintiff filed her EEOC charge, Deneoud was no longer permitted to assist Plaintiff with the database conversion project. Defendant asserts that Denoud's internship was terminated in November 2004 because he refused to perform assigned projects. (Def.'s Br. 20).

While employed by Heinz, employees were permitted to use unaccrued vacation time to take paid time off. This policy continued at Del Monte through 2004. Effective 2005, Del Monte's policy changed and employees were not allowed to take paid time off if they had not accrued vacation time. The new policy did, however, allow for exceptions upon request by the employee to supervisors and human resources for consideration. (Defendant's CSUMF ¶ 73). Approximately three months after the new policy was implemented, Kemp had accrued two and one-half (2 ½) days and requested unaccrued time off to care for her husband. Sobol informed Plaintiff that her request would not be granted, but she could take unpaid time off. (Defendant's CSUMF ¶ 76).

**III.    LEGAL STANDARD FOR SUMMARY JUDGMENT**

Pursuant to FED. R. CIV. P 56(c), summary judgment shall be granted when there are no genuine issues of material fact in dispute and the movant is entitled to judgment as a matter of law. To support denial of summary judgment, issues of fact in dispute must be both genuine and material, i.e., one upon which a reasonable fact finder could base a verdict for the non-moving party and one which is essential to establishing the claim. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues, and if there are, whether they are both genuine and material. *Id.* The court's consideration of the facts must be in the light most favorable to the party opposing

summary judgment and all reasonable inferences from the facts must be drawn in favor of that party as well. *Whiteland Woods, L.P. v. Township of West Whiteland*, 193 F.3d 177, 180 (3d Cir. 1999), *Tigg Corp. V. Dow Corning Corp.*, 822 F.2d 358, 361 (3d Cir. 1987).

When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In the language of the Rule, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. at 587.

**IV.   DISCUSSION**

    A.   <u>Plaintiff's Claims Are Not Time Barred</u>

Defendant alleges that Plaintiff's claims regarding her failure to receive promotions in 2002 are time-barred. (Defendant's Memorandum 9). In Pennsylvania, a charge must be filed within 300 days of the alleged discriminatory conduct - otherwise the claim is time-barred. *See Harris v. SmithKline Beecham*, 27 F. Supp 569, 576 (E.D. Pa. 1998), *aff'd* 203 F.3d 816 (3d Cir. 1999). However, if the alleged discriminatory conduct is a "continuing violation," the statute of limitations begins to run on the date of the last occurrence of discrimination rather than the first. *Miller v. Beneficial Management Corporation,* 977 F.2d 834, 842 (3d Cir. 1992), *citing Bronze Shields, Inc. v. New Jersey Dept. Of Civ. Serv.,* 667 F.2d 1074, 1081 (3d Cir. 1981). In the instant case, Plaintiff alleges a systematic pattern of discrimination between May 2002 and December 2003. She filed her first charge with the EEOC on or about August 13, 2004. Therefore, if Plaintiff applied for the Senior Cost Analyst position on December 1, 2003, only 257 days elapsed between the application and filing of the EEOC charge. Because Plaintiff alleges an ongoing pattern of discrimination, and the final alleged act occurred within the statute of limitations, this Court finds Plaintiff's claims are not time-barred.

B. The Establishment of a Prima Facie Case of Discrimination

Kemp contends that she suffered discrimination at the hands of her employer, Del Monte Foods, based upon her race, age, and gender[1]. In analyzing Kemp's claims we apply the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). In order to establish a claim under Title VII, § 1981, ADEA, or PHRA, Kemp must first establish a *prima facie* case of discrimination. To do so, she must offer sufficient evidence that she was: (1) a member of the protected class, (2) qualified for the position she sought, and (3) nonmembers of the protected class were treated more favorably. *See Goosby v. Johnson & Johnson Med. Inc.*, 228 F.3d 313, 318-19 (3d Cir. 2000); *Jones v. Sch. Dist. of Philadelphia,* 198 F.3d 403, 410-11 (3d Cir. 1999); *Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 522 (3d Cir. 1992). If Kemp successfully establishes a *prima facie* case, Del Monte must come forward with a legitimate, non-discriminatory reason for the adverse employment decision. *Goosby v. Johnson & Johnson Med. Inc.*, 228 F.3d at 319 (*citing Texas Dept. Of Community Affairs v. Burdine*, 450 U.S. 248, 254-56 (1981)). "If the employer is able to proffer a legitimate, nondiscriminatory reason for its actions, the plaintiff must demonstrate that the proffered reason was merely a pretext for unlawful discrimination." *Goosby v. Johnson & Johnson Med. Inc.*, 228 F.3d at 319.

Kemp's burden of establishing a *prima facie* case of disparate treatment is not onerous. *Texas Department of Community Affairs v. Burdine*, 450 U.S. at 253. It is undisputed that Kemp is an African American female over the age of forty (40), was reasonably qualified for the positions sought, and non-members of the protected class were hired for the positions in her stead. Therefore, Kemp has met her burden of establishing a *prima facie* case.

---

[1] There is no need to differentiate between Kemp's federal discrimination claims and PHRA claims because, for our purposes, the same analysis is used for each. *See, e.g., Simpson v. Kay Jewelers*, 142 F.3d 639, 643-44 & n.4 (3d Cir. 1998); *Jones v. School District of Philadelphia*, 198 F.3d 403, 410-411 (3d Cir. 1999); *Fairfield Township Volunteer Fire Co. No. 1 v. Commonwealth*, 609 A.2d 804, 805 (Pa. 1992).

      C.      <u>Legitimate Business Interest and Pretext</u>

Because Plaintiff met the burden of establishing a *prima facie* case, Del Monte must come forward with a legitimate, nondiscriminatory business reason for its actions. Del Monte contends that other candidates were more qualified for the positions in question. For the Production Planner positions, the successful candidates (white and under forty) had college degrees and experience at other companies in production planning. Plaintiff has neither a college degree or production planning experience. In the Financial Analyst position, a younger white male with significantly greater finance and accounting experience was selected for the position. Similarly, in the Senior Cost Analyst position, the successful applicant had significantly greater finance and accounting experience. Lastly, the parties contest whether the old age analyst position was actually filled. While the parties agree the position was vacant in 2002, Plaintiff claims it was later awarded to a younger, white male candidate that never applied for the position. (Pl's Brief 3). However, the position was filled nearly three years later, after the merger of Heinz and Del Monte. In 2002, Heinz made a deliberate choice to leave the Old Age Analyst position vacant. While Del Monte promoted a younger, white male candidate to Old Age Analyst nearly three years later, the scope of the position had changed. There is ample evidence, therefore, to find that Del Monte has articulated legitimate nondiscriminatory business reasons for offering the positions to nonmembers of the protected class.

      Further, this Court finds that Del Monte has offered a legitimate nondiscriminatory business reason for removing Mr. Shoup's comments from Plaintiff's 2004 performance review. Del Monte's human resources department explicitly stated that performance reviews are not appropriate places to discuss salary grade changes or promotions. (Defendant's CSUMF ¶ 52).

      Because Del Monte has articulated legitimate, nondiscriminatory business reasons for its actions, Kemp must show that Del Monte's articulated reasons were merely a pretext for race, gender or age discrimination. To show pretext, Kemp must point to some evidence from which a fact finder could reasonably:

      (1) disbelieve Del Monte's articulated legitimate business reasons; or

      (2) believe that an invidious discriminatory reason was <u>more likely than not</u> a motivating

or determinative cause of Kemp's failure to receive a promotion. *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994).

To discredit a legitimate reason proffered by an employer, a plaintiff must present evidence demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies (sic), or contradictions" in that reason that one could reasonably conclude it is incredible and unworthy of credence, and ultimately infer that the employer did not act for the asserted non-discriminatory reasons. *Fuentes v. Perskie*, 32 F.3d at 765. To discredit Del Monte's proffered reasons, however, Kemp cannot simply show that Del Monte's decisions were wrong or mistaken. The factual dispute at issue is whether Del Monte was motivated by discriminatory animus, not whether Del Monte was wise, shrewd, prudent or competent. *See Ezold v. Wolf, Block, Schorr & Solis-Cohen,* 983 F.2d 509, 531, 533 (3d Cir. 1992); *Villanueva v. Wellesley College,* 930 F.2d 124, 131 (1st Cir.), *cert. denied*, 502 U.S. 861 (1991).

The Third Circuit Court has summarized: "federal courts are not arbitral boards ruling on the strength of the 'cause' for the [adverse employment action]. The question is not whether the employer made the best, or even a sound, business decision; it is whether the real reason is discrimination." *See Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1109 (3d Cir. 1996). Therefore, "the plaintiff must show, not merely that the employer's proffered reason was wrong, but that it was so plainly wrong that it cannot have been the employer's real reason." *See id.*

Kemp's primary claim appears to be that similarly situated employees received promotions while she did not, thereby demonstrating pretext and discriminatory animus. The Court finds this argument unpersuasive. The employees who received promotions were not similarly situated. As earlier described, the candidates who received promotions had better qualifications for the positions at issue. Kemp also alleges pretext when certain statements regarding a promotion were deleted from her 2004 performance review. According to Kemp, the comments were removed from her performance review because the defendant knew that she was not being compensated for the level of work she was assigned. (Pl's Br. 7). Here, Del Monte offered a valid and plausible reason for the removal of the comments from plaintiff's 2004 performance review. Del Monte's Senior Manager of Human Resources, Melinda Rombold,

removed the comments because in her judgment performance reviews are not an appropriate place in which to discuss salary grade changes or promotions. (Def.'s Br. 5).

Because Kemp's arguments regarding pretext do not suggest any race, gender or age animus on the part of Del Monte, the Court finds that Kemp has failed to meet her burden to show that the articulated reason set forth by Del Monte was merely a pretext for discriminatory intent. This Court will grant Del Monte's motion for summary judgment as to Kemp's race, gender or age discrimination claims on the grounds that Kemp has failed to demonstrate pretext under the third prong of the *McDonnell Douglas* framework.

D.    Retaliation Claim

In addition to her race, age and gender discrimination claims, Kemp also contends that she was subject to unlawful retaliation after she filed a complaint with the EEOC on August 13, 2004. The EEOC Complaint alleged that Del Monte's failure to promote Kemp was due to race, age and gender discrimination. Kemp subsequently filed her first federal court action on November 12, 2004.

Plaintiff claims that Del Monte retaliated against her on three different occasions: (1) when she was denied comp time, (2) when an intern hired to assist her was abruptly fired, (3) and when she was denied permission to use unaccrued paid vacation time.[2]

To establish a *prima facie* case of retaliation under Title VII, Kemp must show the following: (1) she engaged in conduct protected by Title VII; (2) after or contemporaneous with engaging in that conduct, Del Monte took an adverse action against her; (3) the adverse action was materially adverse; and (4) there was a causal connection between her participation in the protected activity and the adverse employment action. *Burlington Northern & Santa Fe Ry. v. White*, 126 S. Ct. 2405, 2415 (U.S. 2006); *Hare v. Potter*, 220 Fed. Appx. 120, 127 (3d Cir. 2007); *Weston v. Pennsylvania*, 251 F.3d 420, 430 (3d Cir. 2001).

---

[2]    Plaintiff also alleges that her increase in workload was retaliatory. The Court, however, finds little credence in such contention. The increase in her workload began in or about December of 2002, two years before she engaged in any protected activity.

If an employee establishes a *prima facie* case of retaliation, the burden shifts to the employer to advance a legitimate, non-retaliatory reason for its adverse employment action. *Krouse v. American Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997). The employer's burden at this stage is "relatively light: it is satisfied if the defendant articulates any legitimate reason for the [adverse employment action]; the defendant need not prove that the articulated reason actually motivated the [action]." *Id.* at 500-501 *quoting Woodson v. Scott Paper Co.*, 109 F.3d 913, 920 n.2 (3d Cir. 1997).

If the employer satisfies its burden, the plaintiff must be able to convince the factfinder both that the employer's proffered explanation was false, and that retaliation was the real reason for the adverse employment action. *Krouse v. American Sterilizer Co.*, 126 F.3d at 501; *see also St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 519 (1993) ("It is not enough . . . to disbelieve the employer; the factfinder must believe the plaintiff 's explanation of intentional discrimination."). The plaintiff must prove that retaliatory animus played a role in the employer's decisionmaking process and that it had a determinative effect on the outcome of that process. *Woodson v. Scott Paper Co.*, 109 F.3d at 931-35 (discussing proper standard to apply in Title VII retaliation case). The burden of proof remains at all times with the plaintiff. *Id.* at 920 n.2.

In this instance, there is very little evidence that supports a *prima facie* case of discriminatory retaliation. Though Plaintiff satisfies the first two (2) elements, she must also demonstrate that she suffered an materially adverse employment action as well as a causal connection between her protected activity and such adverse action. "Materially adverse" in this context means that the employer's actions must be harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination. *See Burlington Northern & Santa Fe Ry. v. White*, 126 S. Ct. at 2415[3]. Stated differently, a plaintiff

---

[3] Prior to *Burlington Northern*, this Court defined an adverse employment action as one that "alter[ed] the employee's compensation, terms, conditions, or privileges of employment, deprive[ed] him or her of employment opportunities, or adversely affect[ed] his or her status as an employee." *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1300 (3d Cir. 1997) (internal quotation and citation omitted). The new standard "protects an employee from a wider range of

10

may meet her burden by demonstrating that her employer's conduct is "likely to deter victims of discrimination from complaining to the EEOC." *Id.* (internal quotation and citation omitted). "[P]etty slights, minor annoyances, and simple lack of good manners" are normally not sufficient to deter a reasonable person. *Id.* Whether an action is materially adverse "often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed[4]." *Id*

As set forth above, approximately three months before Plaintiff filed her initial EEOC complaint, Kemp's supervisor asked her to convert a company database. Plaintiff claims she was given permission at that time to take "comp time" for the extra hours necessary to complete the project. However, two months after filing the EEOC complaint, Plaintiff asked if she could use her comp time, and her request was denied. (Defendant's CSUMF ¶ 64). At that time, Del Monte had a policy that did not allow comp time. Plaintiff, therefore, was not entitled to take comp time. Based on such policy and circumstances, the Court finds this denial would not be sufficient to deter a reasonable person from complaining about unlawful discrimination.

Plaintiff's second complaint also fails. Plaintiff contends that, shortly after filing her initial EEOC claim in August 2004, an intern originally assigned to her, was no longer permitted to assist her. The intern was in fact terminated in November 2004, and Plaintiff claims she had even more duties and responsibilities than she did before the intern was hired. (Kemp Dep. Tr. 343). The evidence in the record indicates the intern was terminated for misconduct. Moreover, having the aid of an intern taken away, when in fact there is no evidence Plaintiff ever had similar help in the past, falls woefully shy of the requirements of *Burlington Northern*.

---

conduct" than the old one. *Phelan v. Cook County*, 463 F.3d 773, 781 n.3 (7th Cir. 2006).

[4] In determining what specific conduct is materially adverse, the Supreme Court has stated that "excluding an employee from a weekly training lunch that contributes significantly to the employee's professional advancement might well deter a reasonable employee from complaining about discrimination" *Burlington Northern & Santa Fe Ry. v. White*, 126 S. Ct. at 2415. Similarly, ordering an employee to do work assignments that are "more arduous and dirtier" may constitute "materially adverse" action. *Id.* at 2417.

Finally, Plaintiff complained that Del Monte failed to grant her unaccrued paid time off. Before Del Monte acquired Heinz, employees were permitted to use unaccrued vacation time to take paid time off. In the beginning of 2005, Del Monte instituted a policy that did not allow employees to take unaccrued vacation time. The new policy allowed for a transition period where employees could request an exception to the policy upon approval from both their supervisor and from the Human Resource department. In March 2005, Kemp requested unaccrued paid time off to care for her husband who was in the hospital. Her request was denied, but Plaintiff was informed she could take unpaid time off. Because it is undisputed that this action was based upon a company policy, such action is not adverse to Plaintiff. Plaintiff fails to meet the third prong of her *prima facie* case, and her discriminatory retaliation claim fails. Notwithstanding, such finding, the Court shall continue with the analysis of the final prong of Plaintiff's *prima facie* case.

With respect to the causation prong, a court must consider whether a reasonable jury could link the employer's conduct to retaliatory animus. *See Jensen v. Potter*, 435 F.3d 444, 449 n.2 (3d Cir. 2006) (explaining "[t]he ultimate question in any retaliation case is an intent to retaliate vel non"). To establish the requisite causal connection a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link. *See Krouse v. American Sterilizer Co.*, 126 F.3d at 503-04; *Woodson v. Scott Paper Co.*, 109 F.3d at 920-21. In assessing this, the Court must consider the case "with a careful eye to the specific facts and circumstances encountered." *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 279 n.5 (3d Cir. 2000). Evidence probative of a causal link can be inferred from evidence "gleaned from the record as a whole." *Id.* at 281. ("temporal proximity or antagonism merely provides an evidentiary basis from which an inference can be drawn."). Mere temporal proximity, however, is insufficient to demonstrate a causal link between the two events. *See*

*Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1302 (3d Cir. 1997).[5]

The "unusually suggestive facts" of *Jalil* do not exist in this instance. Nor can Plaintiff establish a pattern of antagonism. Plaintiff concedes that she has never been subject to epithets, slurs, or derogatory comments. She has never received an unfavorable review, been disciplined or reprimanded. There is simply no evidence from which this Court can infer a causal connection between Plaintiff's participation in the protected activity and any adverse employment action. Plaintiff's retaliation claim therefore also fails.

V. **CONCLUSION**

Based upon the foregoing, the Court finds that there are no material facts in dispute as Kemp is unable to show the articulated reason set forth by Del Monte was merely a pretext for discriminatory intent. This Court will grant Del Monte's motion for summary judgment as to Kemp's race, gender or age discrimination claims.

The Court further finds Kemp failed to establish a *prima facie* case of retaliation based upon race, age or gender discrimination. Del Monte's motion for summary judgment on the retaliation claim must also be granted. An appropriate order will follow.

               s/ David Stewart Cercone
               David Stewart Cercone,
               United States District Judge

cc: Homer L. Walton, Esquire
   Leta Pittman, Esquire
   Tucker Arensberg, P.C.
   1500 One PPG Place
   Pittsburgh, PA 15222

---

[5] The court in *Woodson v. Scott Paper Co.*, 109 F.3d 913, 920 (3d Cir. 1997), citing *Jalil v. Avdel Corp.*, 873 F.2d 701, 708 (3d Circ. 1989), stated in dicta that "temporal proximity between the protected activity and the termination is sufficient to establish a causal link. *Woodson v. Scott Paper Co.,*, 109 F.3d at 920. The Third Circuit restricted that holding in *Robinson*, stating that timing alone can be sufficient, but only in a case with the "unusually suggestive facts" of *Jalil* in which proximity is so close as to demand a finding of causation. (The events prior to Jalil's discharge began the day his employer received news of his EEOC claim.)

Christopher K. Ramsey, Esquire
Beth M. Henke, Esquire
S. Beth Gollmar, Esquire
Morgan Lewis & Bockius LLP
One Oxford Centre, 32nd Floor
Pittsburgh, PA 15219